**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA,

v.                                                          CASE NO. 6:11-CR-142-Orl-36KRS

KHALEEL KALIPERSAD,

_____/

## ORDER

This cause comes before the Court on the Report and Recommendation of Magistrate Judge Karla R. Spaulding, filed on January 25, 2012 (Doc. 65). In the Report and Recommendation, Judge Spaulding recommends the Court deny Defendant Khaleel Kalipersad's ("Defendant") Amended Motion to Suppress Evidence and Statements ("Motion to Suppress"), filed on September 14, 2011 (Doc. 33). On February 8, 2012, Defendant filed Objections to the Report and Recommendation (Doc. 66). As such, this matter is ripe for review.

## BACKGROUND

Sergeant Jeff Miller ("Sergeant Miller") is an employee with the Holly Hill Police Department and the lead investigator of a group referred to as the Bhoolai organization. Tr.-37-38.[1] According to Sergeant Miller, the Bhoolai organization consists of Vidya Bhoolai, Krishna Bhoolai (also known as David Bhoolai), and Steven Sahatah. Tr.-38. Also, Vidya Bhoolai's son, Khaleel

---

[1] Doc. 63 is the Transcript of the Motion to Suppress Hearing, held before Magistrate Judge Karla R. Spaulding on January 6, 2012. All references to this docket entry will be denoted "Tr." followed by the page number.

Kalipersad ("Defendant"), was named as a "person of interest" in the investigation, though not a target. Tr.-39.

In April of 2011, the Bhoolai organization was being investigated by the Holly Hill Police Department for crimes including racketeering, grand theft, and fraudulent activity. Tr.-37. Prior to April 29, 2011, a state court judge issued felony arrest warrants for individuals associated with the Bhoolai organization, but no warrant was issued for Defendant. Tr.-40-41. Through investigation, a number of residences and businesses were identified as locations that members of the Bhoolai organization used or visited, including: (1) a South Ridgewood Avenue address in Ormond Beach, Florida; (2) a Daytona Avenue address in Holly Hill, Florida; and (3) 20 Lorillard Drive in Ormond Beach, Florida ("the Lorillard Residence"). Tr.-40-41. With regard to the targets' presence at these businesses and residences, Officer Graves testified:

> . . . we didn't know which suspects would be at any of the locations. So it wouldn't be surprising if all the targets were obtained – were apprehended at one location or if we got nothing at our location and another unit – another tram unit came in contact with all of them at another location.

Tr.-6. Vidya Bhoolai testified that she, Defendant, and Steven Sahatah all resided at the Lorillard Residence. Tr.-96. Moreover, she testified that Defendant and Steven Sahatah owned the Lorillard Residence. Tr.-95.

Execution of the felony arrest warrants was scheduled to occur on April 29, 2011 at the previously mentioned addresses. That morning, Sergeant Miller held a briefing for law enforcement officers who would be assisting in serving the warrants. Tr.-40-41. Immigration Officer Anthony Consolino ("Officer Consolino"), who is employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, attended because it was anticipated that Defendant may be found during the service of the warrants. Tr.-56, 58. Officer Consolino's role on that day

was to determine the identity and alienage of Defendant, if encountered. Tr.-59. In addition to Sergeant Miller and Officer Consolino, Investigator Richard Charles Graves, Jr. ("Investigator Graves") and Sergeant Anthony Shank ("Sergeant Shank") of the Volusia County Sheriff's Office and Investigator Walter Melton ("Investigator Melton") of the Holly Hill Police Department assisted in serving the warrants on the Lorillard Residence. Tr.-4, 25, 30.

Upon arrival at the Lorillard Residence, Vidya Bhoolai was found outside the doorway of the home. Tr.-8, 27, 32, 44. She was taken into custody by Investigator Melton without incident. Tr.-28. Investigator Melton testified that Vidya Bhoolai told him that her son and grandson were in the Lorillard Residence, in addition to firearms.[2] *Id*. At that point, Investigator Melton relayed this information to the other officers, who were attempting to gain entry into the Lorillard Residence. *Id*. Before making entry into the home, Sergeant Miller made numerous verbal announcements for the remaining occupants to step outside, but received no response. Tr.-10-11, 46, 61. The officers entered the home at that point. Tr.-11, 46. Almost immediately, Investigator Graves and Officer Consolino were confronted by Defendant. Tr.-11, 63. Defendant was taken into custody without incident. *Id*. Soon after, the officers were confronted by Defendant's girlfriend, Kaley Hall. Tr.-11, 34, 64. Officer Consolino secured Kaley Hall while the rest of the home was cleared by Investigator Graves and Sergeant Shank. Tr.-64. Once secured, Kaley Hall was seated next to Defendant. Tr.-

---

[2]Vidya Bhoolai testified that she told the law enforcement officials that her grandson was sleeping inside and never gave any indication that her son or firearms were present in the Lorillard Residence. Tr.-94. This testimony directly contradicts that of Investigator Melton. However, upon review of the record (Doc. 65, p. 4, FN5), including the transcript, this Court defers to the Magistrate Judge's determination on issues of credibility between Investigator Melton and Vidya Bhoolai. *See U.S. v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (" . . . in evaluating the factual version of events between the law enforcement officers and [a defendant] . . . [the Court] should defer to the Magistrate judge's determinations unless his understanding of the facts appears to be 'unbelievable.'").

50, 65. While clearing a back bedroom, Investigator Graves discovered a firearm sitting in plain view on the night stand to the left of the bed.[3] Tr.-15. Sergeant Shank confirms Investigator Graves' testimony. Tr.-35. Two gun cases were found under the bed, however they were not searched at that time. Tr.-15, 35. Upon returning from the back bedroom, Investigator Graves testified that he stated something to the effect of "we got a gun," to the other officers, in order to alert them to the discovery of the firearm in the back bedroom. Tr.-21. Officer Consolino testified that Investigator Graves made at least two statements in reference to the firearm. First, Officer Consolino testified that Investigator Graves announced that he had found a firearm, which Officer Consolino believes was not heard by either Defendant or Kaley Hall. Tr.-66-67. Second, Officer Consolino testified that Investigator Graves said to Kaley Hall something to the effect of "[h]ey, I found the firearm, I found your firearm." Tr.-67. At which point, Kaley Hall declared the gun did not belong to her, followed by Defendant stating that the gun belonged to him. Tr.-21, 68. Defendant went on to state that there were two other guns in his bedroom that belonged to him. *Id*. After officers were informed that Defendant was not permitted to possess a gun, the two guns under the bed in the back room were recovered. Tr.-18. Vidya Bhoolai's grandson was ultimately found in the home as well. Tr.-20. Defendant was not Mirandized at the Lorillard Residence.

Special Agent Joe Grey ("Special Agent Grey") is employed with the Department of Homeland Security. Tr.-72. Though he did not participate in serving the warrants on the Lorillard Residence on April 29, 2011, he was contacted by Officer Consolino afterward and informed that there was a possible illegal alien in possession of a firearm in custody. Tr.-72-73. After some

---

[3] Kaley Hall testified that this firearm was not on the night stand, but rather on the bedroom couch, in her purse. Tr.-110.

investigation, it was confirmed that Defendant was unlawfully present in the United States. Tr.-74-75. At that point, Special Agent Grey and Special Agent Jackie Acosta ("Special Agent Acosta") traveled to Ormond Beach, Florida to interview Defendant. Tr.-73. Prior to the interview, Special Agent Grey Mirandized Defendant. During the course of the interview, Defendant admitted that all three firearms found at the Lorillard Residence belonged to him. Tr.-79.

## STANDARD

When a party makes a timely and specific objection to a Magistrate Judge's Report and Recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made". 28 U.S.C. § 636(b)(1)(C); *U.S. v. Raddatz*, 447 U.S. 667 (1980). The district judge may accept, reject, or modify in whole or in part, the Report and Recommendation of the magistrate judge. *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982). The District Judge may also receive further evidence or recommit the matter to the Magistrate Judge with further instructions. *Id. See also* Rule 59(b), Fed. R. Crim. P.

## ANALYSIS

Defendant raises four objections to the Magistrate's Report and Recommendation: (1) entry into the Lorillard Residence was impermissible because the officers did not have the authority to conduct a protective sweep of the home; (2) discovery of the initial firearm was impermissible because it was not in plain view and officers did not have authority to search Kaley Hall's purse; (3) Investigator Graves' statement to Kaley Hall regarding ownership of the firearm amounted to questioning of Defendant prior to him being Mirandized; and (4) Defendant's waiver of *Miranda* rights once detained was induced by deception. *See* Doc. 66.

## I. Entry Into the Lorillard Residence

Defendant argues that even if Vidya Bhoolai stated that he was inside of the Lorillard Residence, the officers still would not be permitted to enter into the home pursuant to a protective sweep because there was no arrest warrant for Defendant. *See* Doc. 66, p. 2. Law enforcement officers may conduct a protective sweep inside a residence incident to an arrest made outside the residence "if the arresting officer has (1) a reasonable belief that third persons are inside, and (2) a reasonable belief that the third persons were aware of the arrest outside the premises so that they might destroy evidence, escape *or* jeopardize the safety of the officers or the public." *United States v. Flores*, 2009 WL 55022 at *2 (M.D.Fla. Jan. 7, 2009) (emphasis added).

Initially, it should be noted that Steven Sahatah was one of the individuals for which the officers had a felony arrest warrant. Sergeant Miller testified that the Lorillard Residence was a location that the targets of the warrants, including Steven Sahatah, were known to use or visit (Tr.-40-41) and Vidya Bhoolai testified that Steven Sahatah both owned and lived in the Lorillard residence (Tr.-96). Thus, based on the investigation of the Bhoolai organization, a probability existed that Steven Sahatah was inside of the Lorillard Residence. Furthermore, on the day of the search, Investigator Melton was told by Vidya Bhoolai that Defendant and her grandson were in the Lorillard residence, in addition to firearms. Tr.-28. Therefore, there was sufficient reason to believe that third persons were inside of the Lorillard Residence.

The officers announced their presence repeatedly before entering into the home. Tr.-10-11, 46, 61. Likely in response to these announcements, Defendant was found approaching the door as soon as the officers gained entry. Tr.-11, 63. In addition, Kaley Hall testified that through the bedroom window, she could see the officers "breaking the fence open." Tr.-107. The apparent

nature of the officers' presence coupled with Vidya Bhoolai's statement that firearms were inside the home create sufficient reason to believe the safety of the officers was in jeopardy. Thus, the Court is in agreement with the Magistrate that the officers were permitted to conduct a protective sweep.

## II.  Seizure of the Firearm

Defendant argues that the firearm seized initially was not located in plain view. *Id.* at pp. 2-3. Defendant bases this primarily on Kaley Hall's testimony that the firearm was in her purse. *Id.* "[I]f police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

As previously discussed, the officers were lawfully present in the back bedroom pursuant to a lawful protective sweep for safety purposes. Additionally, the incriminating character of the firearm at issue was immediately apparent. *See e.g. U.S. v. Pericles*, 2009 WL 1490576 at *5 (S.D.Fla. May 27, 2009) (noting the immediately apparent incriminating character of firearms and ammunition found while an officer was lawfully conducting a protective sweep); *U.S. v. Jones*, 2006 WL 2841139 at *3 (S.D.Ala. Sep. 29, 2006) (same). Kaley Hall testified that the gun was in her purse, however this testimony does not dispute that it was in plain view. However, Kaley Hall's contention that the firearm was on the couch and not the night stand is directly contradicted by the sworn testimony of Investigator Graves and Sergeant Shank. Because of Kaley Hall's credibility issues,[4] her testimony will not be given weight over that of Investigator Graves and Sergeant Shank.

---

[4]Special Agent Grey testified that during a recorded phone conversation, Kaley Hall tells Defendant that she intends to find someone to say that the guns belonged to him/her and not to Defendant. Tr.-84-85.

Thus, the Court is in agreement with the Magistrate Judge that the firearm at issue was in plain view.

### III.  Pre-*Miranda* Statements

Defendant argues that Investigator Graves' statement to Kaley Hall that he had found her gun amounts to "questioning" prior to reading Defendant his *Miranda* rights[5], in violation of *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). In *Innis*, the Supreme Court stated that " . . . the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police know are reasonably likely to elicit an incriminating response from the subject." *Innis*, 446 U.S. at 300-301. Defendant asserts that Investigator Graves' statement amounts to questioning of him as well, because of his proximity to Kaley Hall when the statement was made. *See* Doc. 66, pp. 3-4.

There is some dispute over exactly what Investigator Graves said. Investigator Graves testified that upon returning from the back bedroom, he stated something to the effect of "we got a gun," to the other officers, in order to alert them to the discovery of the firearm. Tr.-21. Additionally, he explicitly testified that this statement was not directed at Defendant. *Id*. Officer Consolino's testimony appears to verify that Investigator Graves initially stated that he had a firearm when returning from the back bedroom. Tr.-66-67. However, Officer Consolino also testified that Investigator Graves said to Kaley Hall something to the effect of "[h]ey, I found the firearm, I found your firearm." Tr.-67. It should be noted that it is undisputed that Investigator Graves never made a statement to Defendant regarding the gun. Therefore, regardless of Defendant's proximity to Kaley Hall, there is no evidence to suggest that Investigator Graves' statement was reasonably

---

[5] *See Miranda vs. Arizona*, 384 U.S. 436 (1966).

- 8 -

likely to elicit an incriminating response from Defendant or that Defendant perceived the statement as an effort to elicit information from him.. Thus, the Court is in agreement with the Magistrate that Investigator Graves did not question Defendant prior to Mirandizing him, as Defendant's statement that the guns were his was a voluntary statement.

### IV. Post-*Miranda* Statements

Defendant argues he was "lulled" into talking with Special Agents Grey and Acosta, because they claimed to only want to talk to him about his immigration issues and after he waived his *Miranda* rights, the agents focused on criminal issues, rather than immigration issues. *Id*. at p. 4. Accordingly, Defendant argues his waiver was not the product of a free and deliberate choice, as required in *Moran v. Burbine*, 475 U.S. 412, 421 (1986). However, "[a] defendant is not required to be advised of every crime about which he may be questioned when his [*Miranda*] rights are read to him." *U.S. v. Ramirez*, 2007 WL 196864 at *3 (N.D.Ga. Jan. 23, 2007) (citing *Colorado v. Spring*, 479 U.S. 564, 577 (1987)). This is even true in circumstances such as Defendant's, where *Miranda* rights have been waived under the belief that immigration issues will be the focus of the interview. *See Ramirez*, 2007 WL 196864. Thus, the Court is in agreement with the Magistrate Judge that Defendant's waiver of *Miranda* rights was not induced by deception.

### V. Conclusion

After conducting a *de novo* review of the record, including the Amended Motion to Suppress Evidence and Statements, the Government's response to the motion, Defendant's reply in support of the motion, the transcript of the evidentiary hearing, the Report and Recommendation of the Magistrate Judge, and the objections to the Report and Recommendation, the Court will overrule the Defendant's objections. The Report of the Magistrate Judge will be affirmed in all respects.

Accordingly, it is hereby **ORDERED and ADJUDGED**:

1. The Report and Recommendation of the Magistrate Judge (Doc. 65) is adopted, confirmed, and approved in all respects and is made a part of this order for all purposes, including appellate review. Defendant's objections to the Report and Recommendation are overruled.

2. Defendant Khaleel Kalipersad's Amended Motion to Suppress Evidence and Statements (Doc. 33) is **DENIED**.

3. This matter is scheduled for a criminal status conference before the undersigned on April 17, 2012 at 1:30 p.m.

**DONE AND ORDERED** at Orlando, Florida on April 9, 2012.

Charlene Edwards Honeywell
United States District Judge

**COPIES TO**:
COUNSEL OF RECORD